IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. TRINITY DEFENSE, LLC and CHARLES KIRKSEY, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:23-mc-00040 |
| DTV ARMS, LLC and KRIS PAULSON, | § § § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF MOTION TO MODIFY SUBPOENA TO BRADLEY ARANT BOULT CUMMINGS, LLP OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Stafford P. Brantley
State Bar No. 24104774
stafford.brantley@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789

*ATTORNEYS FOR DTV ARMS, LLC and KRIS PAULSON*

Christopher W. Cardwell
(*pro hac vice forthcoming*)
Tennessee Bar No. 19751
Illinois Bar No. 6242641
Missouri Bar No. 49583
ccardwell@gsrm.com
Mary Taylor Gallagher
(*pro hac vice forthcoming*)
Tennessee Bar No. 21482
mtgallagher@gsrm.com
Hilary C. Dennen
(*pro hac vice forthcoming*)
Tennessee Bar No. 35983
hdennen@gsrm.com
Gullett Sanford Robinson & Martin PLLC
150 Third Avenue South, Suite 1700
Nashville, Tennessee 37201
Telephone No. (615) 244-4994

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I. INTRODUCTION ................................................................................................................... 1

II. RELEVANT FACTS AND PROCEDURAL HISTORY ....................................................... 1

      A. Plaintiff Kirksey's Restrictive Covenants ............................................................... 3

      B. Plaintiff Kirksey's Actions in Violation of the Operating Agreement ................... 4

      C. Relevant Procedural History .................................................................................. 5

      D. Subpoena to Bradley .............................................................................................. 6

III. THE COURT SHOULD EITHER MODIFY THE SUBPOENA OR ENTER A PROTECTIVE ORDER THAT RESTRICTS DISCLOSURE OF THE REQUESTED MATERIALS. ................................................................................................ 7

      A. The Court Should Modify The Subpoena To Restrict Disclosure Of The Documents To Plaintiff Kirksey, Defendants, And Their Counsel. ........................ 8

            1. Plaintiff Kirksey seeks communications and documents subject to attorney-client privilege ................................................. 8

            2. The Subpoena requests documents and communications containing trade secret and other confidential and proprietary information in possession of Defendants, which would harm Defendants if disclosed. ........................................... 10

      B. At A Minimum, The Court Should Enter a Protective Order Governing The Disclosure Of The Subpoenaed Documents. .............................. 11

IV. CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

*Cases*

*Belliveau v. Barco, Inc.*,
  No. A-17-CV-379-SS-ML, 2018 U.S. Dist. LEXIS 243971 (W.D. Tex. Feb. 21, 2018) .......... 8

*Brown v. Braddick*,
  595 F.2d 961 (5th Cir. 1979) ................................................................................................ 7

*Cmedia, LLC v. LifeKey Healthcare, LLC*,
  216 F.R.D. 387 (N.D. Tex. 2003) ....................................................................................... 10

*Covered Bridge Resort on Waldens Creek, LLC v. Johnson, Murrell & Ass*ocs., P.C.,
  No. E2011-01437-COA-R9-CV, 2012
  Tenn. App. LEXIS 441 (Tenn. Ct. App. June 29, 2012) ...................................................... 9

*EEOC v. Charles W. Smith& Sons Funeral Home, Inc.*,
  Civil Action No. *4:21-cv-00731,* 2022 U.S. Dist. LEXIS 148238,
  at *5-6 (E.D. Tex. Aug. 18, 2022) ...................................................................................... 7

*Gilbreath v. Brookshire Grocery Co.*,
  No. 6:17-CV-618-JDK, 2019 U.S. Dist. LEXIS 241829 (E.D. Tex. Jan. 2, 2019) ................... 8

*In re Arterial Vascular Eng'g, Inc.*,
  No. 05-99-01753-CV, 2000 Tex. App. LEXIS 7874,
  2000 WL 1726287 (Tex. App.—Dallas Nov. 21, 2000, orig. proceeding ................................ 8

*In re Crescent Res., LLC*,
  457 B.R. 506 (Bankr. W.D. Tex. 2011) ................................................................................ 9

*In re Levien*,
  No. 03-18-00079-CV, 2018 Tex. App. LEXIS 3329 (Tex. App. May 11, 2018) ....................... 8

*Kasparov v. Ambit Tex., LLC*,
  No. 3:16-cv-3206-G-BN, 2017 U.S. Dist. LEXIS 177518 (N.D. Tex. Oct. 26, 2017) .............. 8

*Kilmon v. Saulsbury Indus., Inc.*,
  No. MO:17-CV-99, 2018 WL 5800759 (W.D. Tex. Feb. 13, 2018) ...................................... 12

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
  886 F. Supp. 2d 466 (D. Del. 2012) ..................................................................................... 9

*Nupson v. Schnader Harrison Segal & Lewis LLP*,
  No. 18-cv-2505, 2021 U.S. Dist. LEXIS 67825 (E.D. Pa. Apr. 7, 2021) ............................ 9, 12

*Schnader Harrison Segal & Lewis LLP*,
   No. 18-cv-2505, 2021 U.S. Dist. LEXIS 67825 (E.D. Pa. Apr. 7, 2021) .................................. 9

*Providence Title Co. v. Truly Title, Inc.*,
   No. 4:21-CV-147-SDJ, 2022 U.S. Dist. LEXIS 233862 (E.D. Tex. Sep. 29, 2022) ................ 12

*Total Rx Care, LLC v. Great N. Ins. Co.*,
   No. 3:16-cv-2965-B, 2016 U.S. Dist. LEXIS 193047 (N.D. Tex. Dec. 30, 2016) ................... 12

### *Rules*

Fed. R. Evid. 501 ............................................................................................................................ 8
Fed. R. Civ. P. 26 .......................................................................................................................... 11
Fed. R. Civ. P. 26(c) ................................................................................................................ 11, 12
Fed. R. Civ. P. 45 ........................................................................................................................ 7, 8
Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................................. 8

### *Other Authorities*

Restatement 3d of the Law Governing Lawyers, § 75 .................................................................... 9
US Patent Applications 63/256,247 ....................................................................................... 5, 6, 7

Through their counsel of record, Defendant/Counter-Plaintiff DTV Arms, LLC and Defendant Kris Paulson ("<u>Defendants</u>") submit this Brief In Support Of Their Motion to Modify the Subpoena to Bradley Arant Boult Cummings, LLP ("<u>Bradley</u>"), or In The Alternative, For a Protective Order, and state that:

## I.     INTRODUCTION

This case arises from Plaintiff Charles Kirksey, a former member of Defendant DTV Arms, violating his obligations to Defendant DTV Arms by, among other things, colluding with one of its competitors to steal Defendant DTV Arms' confidential and proprietary information to develop copycat products that beat Defendant DTV Arms' products to the marketplace.  This Motion asks the Court to help Defendants protect their privilege, confidential, and trade secrets information from unrestricted disclosure.  Plaintiff Kirksey subpoenaed privilege, confidential and trade secrets information from Defendants' prior attorney, but his subpoena does not restrict his ability to disseminate that information.  Lack of such restriction concerns Defendants because Plaintiff Kirksey already demonstrated a patent disregard for Defendants' privilege, confidential and their trade secrets information as demonstrated by the existing Injunction.  Accordingly, Defendants respectfully request that the Court modify the Subpoena to restrict production to Plaintiff Kirksey, Defendants, and counsel for both, or, in the alternative, enter a protective order limiting disclosure of the documents to Plaintiff Kirksey, Defendants, and counsel.

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

Defendant DTV Arms is a veteran-owned small business that is one of four companies in the United States specializing in the development, manufacturing, and selling of M134 miniguns (and their respective parts and accessories) for use by militaries across the globe.  (Counterclaim,

attached as **Exhibit 1**, Doc. 5, ¶ 2; Dec. of K. Paulson, attached as **Exhibit 2**, Doc. 26-1, ¶ 7).[1] M134 miniguns are six-barrel, powerful, rotary style machine guns developed prior to the Vietnam War, which have not undergone significant innovation since that time: something Defendant DTV Arms aims to change. (**Exhibit 1**, Doc. 5. at ¶ 12; **Exhibit 2**, Doc. 26-1 at ¶ 12). In doing so, Defendant DTV Arms focused on developing these innovative parts and accessories for these guns for over 3 years. (**Exhibit 1**, Doc. 5. at ¶ 3; **Exhibit 2**, Doc. 26-1 at ¶ 7). Defendant Paulson is the member-manager of DTV Arms. (**Exhibit 2**, Doc. 26-1 at ¶ 2).

The development, manufacturing, and selling of M134 miniguns (and their respective parts) is highly competitive. (**Exhibit 1**, Doc. 5. at ¶ 15). To protect the confidentiality of its proprietary information and trade secrets, Defendant DTV Arms requires its members to agree and adhere to certain confidentiality, non-compete, and non-solicit obligations that restrict their ability to compete with Defendant DTV Arms for a reasonable set amount of time after their relationship with it terminates. (Id.; **Exhibit 2**, Doc. 26-1 at ¶ 17). Further, upon termination of a member's interest, for whatever reason, Defendant DTV Arms requires its members to agree to return all confidential and proprietary information.[2] (**Exhibit 1**, Doc. 5. at ¶ 19). Moreover, because of the nature of the projects, for the two to three years it spent developing its current products, DTV Arms intentionally kept the number of people with knowledge small. (**Exhibit 1**, Doc. 5 at ¶ 16; **Exhibit 2**, Doc. 26-1 at ¶ 19).

---

[1] Many of the documents cited by Defendants were filed under seal by the United States District Court for the Eastern District of Texas. Accordingly, Defendants only cite to the unsealed portion of the documents. This includes Doc. 5 and Doc. 26-1 is the First Declaration of Kristopher Paulson. (Docs. 37 and 48, attached as collective **Exhibit 3**).

[2] Additional steps in this process, includes, without limitation requiring its vendors and employees to sign non-disclosure agreements to protect Defendant DTV Arms' confidential information. (Doc. 5. at ¶ 16).

A.       **Plaintiff Kirksey's Restrictive Covenants**

Plaintiff Kirksey, Thomas Gardner, and Defendant Kris Paulson entered into the Operating Agreement for Defendant DTV Arms (the "Operating Agreement"). (**Exhibit 1**, Doc. 5 at ¶ 7, Exhibit 1; **Exhibit 2**, Doc. 26-1 at ¶ 6). Like all of Defendant DTV Arms' members, Plaintiff Kirksey developed an intimate familiarity with Defendant DTV Arms' products and strategies. (**Exhibit 1**, Doc. 5 at ¶ 17; **Exhibit 2**, Doc. 26-1 at ¶ 16). Additionally, Plaintiff Kirksey had access to (and knew of) its most confidential information, including, but not limited to:

- design plans and characteristics, including the component parts of the products;
- research and development information, such as cost of development, costs production, and testing results;
- information about the financial health of DTV Arms;
- pricing strategies;
- DTV Arms' business plan;
- profit and margin information;
- information regarding which of DTV Arms' products for which it is or will soon be applying for patent protection;
- the identity of vendors, distributors, and potential buyers; and
- strategies for marketing the products and which customers to target; and information regarding DTV Arms' subcontractors and the relationship between DTV Arms and its subcontractors and suppliers, including negotiations and terms of the relationship.

(**Exhibit 1**, Doc. 5 at ¶ 17; **Exhibit 2**, Doc. 26-1 at ¶ 15). Accordingly, to protect DTV Arms' legitimate business interests, as a condition of membership in Defendant DTV Arms, the members agreed to include certain restrictions in the Operating Agreement, which, among other things:

- preclude them from disclosing any of Defendant DTV Arms' confidential information to a third party;
- preclude them from intentionally using confidential information the member obtained in the manner which would be detrimental to Defendant DTV Arms; and
- restricts from – during the term of their membership and for two years after their membership terminates – "directly or indirectly, own[ing], manag[ing], be[ing] employed by, operat[ing], control[ling], or participat[ing] in the ownership, management, operation, or control of any business that develops, manufactures or sells M-134 mini-guns for use in defense applications, or other products or services that otherwise compete with the Company, within the United States."

(**Exhibit 1**, Doc. 5 at ¶¶ 18-20; **Exhibit 2**, Doc. 26-1 at ¶ 17).

B.  **Plaintiff Kirksey's Actions in Violation of the Operating Agreement**

In early January 2022, James Haltom (owner of Plaintiff US Trinity), Plaintiff Kirksey, and Paulson saw each other at SHOT Show, a shooting, hunting, and outdoor trade show in Las Vegas, Nevada, where manufacturers show their products that are offered for sale and/or those in development.  (**Exhibit 1**, Doc. 5 at ¶ 23; **Exhibit 2**, Doc. 26-1 at ¶¶ 21-22).  Shortly after, on or around January 22, 2022, Plaintiff Kirksey informed Paulson that he intended to go hunting in Dallas, Texas, and intended to visit one of Defendant DTV Arms' contractors.  Thinking nothing of it at the time, Paulson did not object when Plaintiff Kirksey requested items to take with him to the contractor.

On or around January 27, 2022, Plaintiff Kirksey called Defendant Paulson and confessed that the true reason for his visit to Texas was to meet with Haltom.  (**Exhibit 1**, Doc. 5 at ¶ 34; **Exhibit 2**, Doc. 26-1 at ¶ 30).  Plaintiff Kirksey then stated that he agreed to take a job working on an oil pipeline for a Haltom-owned non-competing entity.  (*Id.*).  The conversation ended with Plaintiff Kirksey stating that he would return Defendant DTV Arms' property upon his return from Texas.  (*Id.*).

On January 28, 2022, when Plaintiff Kirksey returned Defendant DTV Arms' property, he, once again, indicated (among other things) that he would be relocating to Texas for a position on an oil pipeline.  (**Exhibit 1**, Doc. 5 at ¶ 36; **Exhibit 2**, Doc. 26-1 at ¶ 33).  After some negotiations, Defendant Paulson agreed to purchase Plaintiff Kirksey's interest in Defendant DTV Arms.  (**Exhibit 1,** Doc. 5 at ¶ 37; **Exhibit 2**, Doc. 26-1 at ¶ 34).

Instead of going to work for an oil company, Plaintiff Kirksey immediately took a position with Plaintiff US Trinity, an entity, which directly competes with Defendant DTV Arms.  (**Exhibit**

**2**, Doc. 26-1 at ¶¶ 9-11). After Defendants learned of Plaintiff Kirksey's subterfuge and of his disclosure of Defendants' information, Defendants sent a cease-and-desist letter to Plaintiffs. (**Exhibit 2**, Doc. 26-1 at ¶¶ 35-36, 39-41, 45-46).

C.   **Relevant Procedural History**

Instead of complying with the request in the letter, Plaintiffs filed their initial Complaint in the 467th Judicial District of Denton County, Texas, styled *U.S. Trinity Defense, LLC and Charles Kirksey v. DTV Arms, LLC and Kris Paulson*, Cause No. 22-2239-467 ("Original Complaint") on March 21, 2022. (Amended Notice of Removal, attached as **Exhibit 4,** Doc. 7, Exhibit 1; **Exhibit 2**, Doc. 26-1 at ¶ 45-46). Defendants removed this case to Federal Court on April 14, 2022, and their Amended Notice of Removal on April 27, 2022. (**Exhibit 4**). After removal of the Complaint, Defendants filed their Answer to the initial Complaint, and Defendant DTV Arms filed its Counterclaim against Plaintiff Kirksey, alleging breach of the Operating Agreement and violation of the Defend Trade Secrets Act, and violations of the Tennessee Uniform Trade Secrets Act. (**Exhibit 1**, Doc. 5).

On May 17, 2022, Defendant DTV Arms filed its Motion and Memorandum in Support of its Motion for Preliminary Injunction, which sought to enjoin Plaintiff Kirksey, and those acting in concert with him, from using trade secrets belonging to Defendant DTV Arms. (Doc. 12, attached as **Exhibit 5**). In their Response, Plaintiffs argued that any confidential information or trade secrets belonged to Plaintiff Kirksey and Defendant Paulson, not Defendant DTV Arms. (Doc. 22, attached **Exhibit 6**, p. 14). In doing so, Plaintiffs attached a copy of the Provisional US Patent Applications 63/256,247 and 63/241,022 prepared by Bradley. (Doc. 22-2, attached **Exhibit 7**). Despite this argument, the United States District Court for the Eastern District of Texas granted the injunction, in part, on March 730, 2023. (Doc. 60, attached as **Exhibit 8**). In

granting the injunction, the Court held that Defendants established they possessed trade secrets. In addition, the Court noted that Defendant DTV Arms lawfully possessed the information at issue and:

- Defendant DTV Arms "invested [REDACTED] researching and developing its products;"
- Defendant DTV Arms' "members, employees, and vendors working on the products are required to sign confidentiality and non-competition agreements;" and
- Defendant DTV Arms' efforts at secrecy worked, as "at least two vendors who worked on these products adhered to their confidentiality agreements when Kirksey reached out to them."

(**Exhibit 8**, Doc. 60, p. 12 (citing to Doc. 54, Exhibit 1, ¶¶ 12–14, 17-19, 37, 42)).

At present, discovery is ongoing. However, the Parties have yet to agree on the final terms of a protective order governing all discovery in this matter.[3]

**D.      Subpoena to Bradley**

Prior to the filing of the lawsuit, Bradley represented Defendants. (**Exhibit 7**, Doc. 22-2; **Exhibit 2**, Doc. 26-1, Exhibit 1). This included representing Defendants with respect to intellectual property matters for Defendant DTV Arms and Defendant Paulson. (**Exhibit 7**, Doc. 22-2; Minigun Rotor, U.S. Patent No. US, 11215,424 BI, attached as **Exhibit 9**).

On May 30, 2023, Plaintiff Kirksey served Bradley with a subpoena ("Subpoena") seeking communications and documents relating to joint representation of Plaintiff Kirksey and Defendant Paulson. (Subpoena, attached as **Exhibit 10**). More specifically, the Subpoena seeks:

- REQUEST FOR PRODUCTION NO. 1: All documents about or referencing the joint representation of Kirksey and Paulson.

- REQUEST FOR PRODUCTION NO. 2: All communications referencing and/or advising about the joint representation of Kirksey and Paulson.

---

[3] As stated in the Motion's Certificate of Conference, the Parties are optimistic that they will be able to reach an agreement on terms of a protective order in the near future. However, Defendants file this Motion out of an abundance of caution and in the event the Parties are unable to agree to protective order terms.

- REQUEST FOR PRODUCTION NO. 3: All documents, including attorney notes and work product, concerning or relating to Provisional US Patent Applications 63/256,247 and 63/241,022.

- REQUEST FOR PRODUCTION NO. 4: All communications, including privileged attorney communications, with or between Kirksey and/or Paulson concerning Provisional US Patent Applications 63/256,247 and 63/241,022.

- REQUEST FOR PRODUCTION NO. 5: All documents, including attorney notes and work product, concerning the transfer of files related to Provisional US Patent Applications 63/256,247 and 63/241,022, including any transfer of files to the law firm of Pitchford Fugett PLLC.

- REQUEST FOR PRODUCTION NO. 6: All communications, including attorney communications, related to the transfer of files related to Provisional US Patent Applications 63/256,247 and 63/241,022, including any transfer of files to the law firm of Pitchford Fugett PLLC.

(**Exhibit 10**). The Subpoena's place of compliance is in Dallas, Texas. (**Exhibit 10**).

### III. THE COURT SHOULD EITHER MODIFY THE SUBPOENA OR ENTER A PROTECTIVE ORDER THAT RESTRICTS DISCLOSURE OF THE REQUESTED MATERIALS.

The Court should modify the subpoena to Bradley, because the Subpoena requires:

- disclosure of privileged and other protected information; and
- disclosure of trade secrets and other confidential and proprietary information.[4]

Even if the Court does not modify the Subpoena, at a minimum, it should enter a protective order restricting disclosure of the requested information to Plaintiff Kirksey, Defendants, and counsel.

---

[4] While parties generally do not possess standing to move to quash or modify a subpoena to a non-party, a party may move to quash or modify a subpoena where the party possess "'a personal right or privilege with respect to the materials subpoenaed.'" *EEOC v. Charles W. Smith & Sons Funeral Home, Inc*., Civil Action No. 4:21-cv-00731, 2022 U.S. Dist. LEXIS 148238, at *5-6 (E.D. Tex. Aug. 18, 2022) (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). There is no question, for the reasons explained below, that Defendants lack standing. The Subpoena seeks information for which Defendant Paulson holds attorney-client privilege, and seeks information relating to trade secrets belonging to both Defendants. In addition, even if a party does not possess standing to file a motion to quash or modify a subpoena, "any party to the litigation has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery." *EEOC v. Charles W. Smith & Sons Funeral Home, Inc*., Civil Action No. 4:21-cv-00731, 2022 U.S. Dist. LEXIS 148238, at *6 (E.D. Tex. Aug. 18, 2022).

A.   **The Court Should Modify The Subpoena To Restrict Disclosure Of The Documents To Plaintiff Kirksey, Defendants, And Their Counsel.**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena that, in relevant part, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45.  Rule 45(d)(3)(A) also permits a court to quash or modify a subpoena that "requires disclosing a trade secret or other confidential research, development, or commercial information." *Gilbreath v. Brookshire Grocery Co.,* No. 6:17-CV-618-JDK, 2019 U.S. Dist. LEXIS 241829, at *3 (E.D. Tex. Jan. 2, 2019).

Here, the Court should modify the Subpoena for two reasons.  First, the Subpoena seeks communications and documents protected from disclosure by attorney-client privilege for which Defendant Paulson does not waive privilege.[5]  Second, the documents and communications relate to Defendants' trade secrets and other confidential information.

1.   **Plaintiff Kirksey seeks communications and documents subject to attorney-client privilege.**

Plaintiff Kirksey seeks information pertaining to privileged documents and communications, for which – to the extent there was joint representation – Defendant Paulson does not waive attorney-client privilege and work product protection.  Counsel was unable to locate any Tennessee[6] cases specifically addressing the "joint client exception" to attorney-client privilege.

---

[5]   To the extent there are any documents or communications regarding Defendant DTV Arms, Paulson is the managing member and does not waive disclosure over those items.

[6]   Because the Court's jurisdiction arises out of diversity jurisdiction, state law governs privilege regarding a claim or defense.  Fed. R. Evid. 501; *Belliveau v. Barco, Inc.*, No. A-17-CV-379-SS-ML, 2018 U.S. Dist. LEXIS 243971, at *6 (W.D. Tex. Feb. 21, 2018).  In this matter, all, except Defendant DTV Arms' counterclaim under the Defend Trade Secrets Act arise under state law. (Second Amended Complaint, attached as **Exhibit 11**, Doc. 42; **Exhibit 5**). Accordingly, Texas or Tennessee law govern the claim of privilege.  In determining which state's law applies to the claim of privilege, courts in the Fifth Circuit examine the place with the most significant relationship.  *Kasparov v. Ambit Tex., LLC*, No. 3:16-cv-3206-G-BN, 2017 U.S. Dist. LEXIS 177518, at *34 (N.D. Tex. Oct. 26, 2017). Moreover, Texas courts recognize that, with respect to attorney client privilege,

> Due to "the nature and purpose of the attorney-client privilege," [*14] it is "governed by the law of the state with the most significant relationship to the communication." *Id.*; *see In re Arterial Vascular Eng'g, Inc.*, No. 05-99-01753-CV, 2000 Tex. App. LEXIS 7874, 2000 WL 1726287, at

*Covered Bridge Resort on Waldens Creek, LLC v. Johnson, Murrell & Assocs., P.C.*, No. E2011-01437-COA-R9-CV, 2012 Tenn. App. LEXIS 441, at *20-21 (Tenn. Ct. App. June 29, 2012) (holding the case was not appropriate for deciding whether or not Tennessee courts should adopt the joint client exception as discussed in 4 ALR 4th, *Applicability of attorney-client privilege to evidence or testimony in subsequent action between parties originally represented contemporaneously by same attorney, with reference to communication to or from one party* (1981), but noting in *dicta* that the article is consistent with results the court previously reached). However, other courts, including federal courts, recognize, generally, waiver of joint privilege requires the consent of all joint clients. *Nupson v. Schnader Harrison Segal & Lewis LLP*, No. 18-cv-2505, 2021 U.S. Dist. LEXIS 67825, at *34 (E.D. Pa. Apr. 7, 2021); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.,* 886 F. Supp. 2d 466, 479 (D. Del. 2012); *In re Crescent Res., LLC*, 457 B.R. 506, 529 (Bankr. W.D. Tex. 2011); Restatement 3d of the Law Governing Lawyers, § 75. Co-clients becoming adversaries in litigation may lead to previously privileged communications becoming discoverable, however, the communications must occur in the course of the joint representation and must involve litigation relating to matters of joint representation. *Schnader Harrison Segal & Lewis LLP*, No. 18-cv-2505, 2021 U.S. Dist. LEXIS 67825, at *34-35 (E.D. Pa. Apr. 7, 2021).

---

*12 (Tex. App.—Dallas Nov. 21, 2000, orig. proceeding). Generally speaking, "the state where the communication took place . . . is the state of most significant relationship." *Leggat*, 904 S.W.2d at 647. For written statements, the state with the most significant relationship will typically be the state where the written statement was received. *In re Arterial Vascular Eng'g*, 2000 Tex. App. LEXIS 7874, 2000 WL 1726287, at *12.
"
*In re Levien*, No. 03-18-00079-CV, 2018 Tex. App. LEXIS 3329, at *13-14 (Tex. App. May 11, 2018). Here, Tennessee law applies to any claims privilege, because the relationship between Defendants and Plaintiff revolved around Tennessee; representation by Bradley occurred out of the Nashville, Tennessee office; and it stands to reason that the communications were received in the Nashville office of Bradley, where the attorney's office is located. (**Exhibit 2**, ¶ 3-4, 6; **Exhibit 7**, p. 8).

Here, Plaintiff Kirksey clearly seeks privileged information. Indeed, on the face of the Subpoena, four of the requests specifically request "attorney notes and work product" or "attorney communications." (**Exhibit 10**, Request for Production 3-6). In addition, the Requests for Production 3 through 6 are not restricted to documents and communications relating to matters of joint representation. (**Exhibit 10**, Request for Production 3-6). Accordingly, the Court should modify the Subpoena to limit the items requested in Requests for Production 3 through 6 to documents and communications relating to matters of joint representation.

> **2.    The Subpoena requests documents and communications containing trade secret and other confidential and proprietary information in possession of Defendants, which would harm Defendants if disclosed.**

In addition, the Court should modify the Subpoena because it seeks disclosure of trade secrets and other confidential information for which disclosure to others, particularly to Plaintiff U.S. Trinity, would harm Defendants. Courts in the Fifth Circuit recognize that a court may "place conditions upon the production of documents where the request requires disclosure of a trade secret or other confidential commercial information and the party seeking discovery shows a substantial need for the material that cannot otherwise be met without undue hardship." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003).

In order to place conditions upon the production, the moving party must establish that the sought information "is a trade secret and that its disclosure might be harmful." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 391 (N.D. Tex. 2003). Courts recognize that "disclosure to a competitor is presumptively more harmful than disclosure to a noncompetitor." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 391 (N.D. Tex. 2003). Once the moving party establishes its burden, the non-moving party must show that the requested information is relevant and necessary. *Id.* Then, the Court "balances the need for the trade secrets

against the claim of injury resulting from disclosure." *Id.* Even if the requested documents are relevant, discovery will not be permitted if the party seeking discovery fails to show need or if the potential harm caused by production outweighs the benefit. *Id.*

Here, there is no question that the items constitute trade secrets and that disclosure would harm Defendants. First, the Subpoena seeks documents and communications relating to the precise trade secrets that the Eastern District concluded constituted trade secrets. (**Exhibit 1**; **Exhibit 1**; **Exhibits 6-7**; **Exhibit 8**, p. 12). More specifically, Requests for Production 3-6 seek various documents and communications relating to Provisional US Patent Applications 63/256,247 and 63/241,022 – the same applications included in Plaintiffs' response to the motion for preliminary injunction. (**Exhibit 1**; **Exhibits 6-7**; **Exhibit 8**, p. 12). Second, disclosure would be harmful to Defendants, because it would permit dissemination of trade secrets to anyone, including Plaintiff US Trinity – Defendant DTV Arms' competitor, along with any number of individuals. (**Exhibit 2**, Doc. 26-1 at ¶¶ 9-11). And, permitting widespread disclosure of the trade secrets and confidential and proprietary information would defeat the steps Defendants took to ensure their confidentiality. As disclosure of the documents constitute Defendants' trade secrets and confidential and proprietary information and disclosure would harm them, the Court should modify the Subpoena.

**B.    At A Minimum, The Court Should Enter a Protective Order Governing The Disclosure Of The Subpoenaed Documents.**

Rule 26 of the Federal Rules of Civil Procedure permits a court, for good cause, to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26. This includes:

- forbidding the disclosure or discovery;
- specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

- forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; and
- requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

FED. R. CIV. P. 26(c). Even where a party seeks information from a third party, a motion for a protective order may be made by any party and such party may seek a Rule 26(c) protective order 'if it believes its own interest is jeopardized by discovery sought from a third person.'" *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2022 U.S. Dist. LEXIS 233862, at *8-9 (E.D. Tex. Sep. 29, 2022) (quoting *Kilmon v. Saulsbury Indus., Inc.*, No. MO:17-CV-99, 2018 WL 5800759, at *4 (W.D. Tex. Feb. 13, 2018)).

To establish "good cause" for purpose of Rule 26(c), a litigant seeking a protective order must "show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Total Rx Care, LLC v. Great N. Ins. Co.*, No. 3:16-cv-2965-B, 2016 U.S. Dist. LEXIS 193047, at *3 (N.D. Tex. Dec. 30, 2016) (finding good cause for a protective order where requested payor contracts at issue contained confidentiality provisions which prohibit disclosure of the contract as well as confidential and proprietary information and the opposing party did not show hardship or public interests weighing against entry of the protective order).

Here, good causes exists for entry of a protective order limiting disclosure to Plaintiff Kirksey, Defendants, and counsel for Plaintiff Kirksey and Defendants. This is because, as explained above, the Requests for Production seeks communications and documents protected from disclosure by attorney-client privilege and documents and communications relate to Defendants' trade secrets and other confidential information. More specifically, Requests for Production Nos. 1 and 2 specifically seek information regarding the joint representation of Plaintiff Kirksey and Defendant Paulson, which, while not generally protected from disclosure between co-

clients, is still protected as it relates to non-parties. *Nupson v. Schnader Harrison Segal & Lewis LLP*, No. 18-cv-2505, 2021 U.S. Dist. LEXIS 67825, at *34-35 (E.D. Pa. Apr. 7, 2021). Moreover, on the face of the Requests, Requests for Production Nos. 3 through 6 seek privileged information, as they specifically request attorney communications and attorney work product. (**Exhibit 10**, Request for Production 3-6). In addition, the Requests seek information containing and regarding trade secrets and confidential and proprietary information, which the United States District Court for the Eastern District of Texas concluded were trade secrets in the possession of Defendants. As explained above, failing to limit disclosure of these documents and communications will result in waiver of privilege over the produced items and could result in harm to Defendants, because it would permit a competitor, such as US Trinity, to access information that is privileged and confidential, and/or trade secret information, such as the information Defendants used in preparation of provisional patent applications and other legal work. Accordingly, the Court should grant the request for a protective order and limit disclosure to anyone other than Plaintiff Kirksey, Defendants, and counsel for Plaintiff Kirksey and Defendants.

## IV.   CONCLUSION

In sum, because the Subpoena seeks documents and communications, which are subject to attorney-client privilege and contain Defendants trade secrets and confidential and proprietary information, Defendants respectfully request that the Court modify the Subpoena to limit Requests 3 through 6 to items relating to joint representation (if any) and limit disclosure to anyone outside of Plaintiff Kirksey, Defendants, and counsel for Plaintiffs and Defendants. In the alternative, Defendants request that the Court enter a protective order limiting disclosure to anyone other than Plaintiff Kirksey, Defendants, and counsel for Plaintiffs and Defendants.

Date: June 13, 2023.                    Respectfully submitted,

/s/ Stafford P. Brantley
Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Stafford P. Brantley
State Bar No. 24104774
stafford.brantley@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789

Christopher W. Cardwell
(*pro hac vice forthcoming*)
Tennessee Bar No. 19751
Illinois Bar No. 6242641
Missouri Bar No. 49583
ccardwell@gsrm.com
Mary Taylor Gallagher
(*pro hac vice forthcoming*)
Tennessee Bar No. 21482
mtgallagher@gsrm.com
Hilary C. Dennen
(*pro hac vice forthcoming*)
Tennessee Bar No. 35983
hdennen@gsrm.com
GULLETT SANFORD ROBINSON & MARTIN PLLC
150 Third Avenue South, Suite 1700
Nashville, Tennessee 37201
Telephone No. (615) 244-4994

***ATTORNEYS FOR DTV ARMS, LLC
and KRIS PAULSON***

## CERTIFICATE OF SERVICE

      I hereby certify that on June 13, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. The notification of such filing will be electronically transmitted to all counsel of record who are listed below:

| | |
|---|---|
| Timothy Micah Dortch<br>**Potts Law Firm, LLP**<br>2911 Turtle Creek Blvd., Suite 1000<br>Dallas, Texas 75219<br>Telephone No. (214) 396-9427<br>mdortch@potts-law.com | Israel R. Silvas<br>Dykema Gossett PLLC<br>1717 Main Street, Suite 4200<br>Dallas, Texas 75201<br>(214) 462-6400<br>ISilvas@dykema.com |
| Christopher Lindstrom<br>**Potts Law Firm, LLP**<br>3737 Buffalo Speedway, Suite 1900<br>Houston, Texas 77098<br>Telephone No. (713) 963-8881<br>clindstrom@potts-law.com | Michael P. Adams<br>Dykema Gossett PLLC<br>111 Congress Avenue, Suite 1800<br>Austin, Texas 78701<br>(512) 703-6315<br>MAdams@dykema.com |
| *Attorneys for Charles Kirksey and U.S. Trinity Defense, LLC* | Steven McMahon Zeller<br>Dykema Gossett PLLC<br>10 S. Wacker Dr., Suite 2300<br>Chicago, Illinois 60606<br>(312) 627-2272<br>szeller@dykema.com |

      */s/ Stafford P. Brantley*
      Stafford P. Brantley